**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Christopher James Nygren,
by and through his Parent and
Natural Guardian, Sharon Kay Nygren,

Plaintiff,

v.

Minneapolis Public Schools, Special
School District No. 1, the Minneapolis
Board of Education, Catherine Shreves,
Chair, and Carol Johnson, Superintendent,
in their representative capacities,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-1305 ADM/AJB

---

Amy J. Goetz, Esq., Center for Education Law, St. Paul, Minnesota, appeared for and on behalf of the Plaintiff.

Laura Tubbs Booth, Esq., and Karen A. Janisch, Esq., Rider Bennett Egan & Arundel, LLP, Minneapolis, Minnesota, appeared for and on behalf of the Defendants.

---

## INTRODUCTION

On October 30, 2001, the undersigned United States District Judge heard Plaintiff Christopher James Nygren's ("Student") Motion for Judgment on the Record [Doc. No. 25]. For the reasons set forth below, the motion is denied.

## BACKGROUND

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, requires states to provide disabled children with a "free appropriate public education." *Id.* § 1401(a)(18). To provide a "free appropriate public education" ("FAPE"), a school must formulate an individualized education plan ("IEP") tailored to the disabled child's unique needs.

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

FILED DEC 14 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

20 U.S.C. § 1412. A school meets its obligation if the disabled student's IEP is "reasonably calculated to enable the child to receive educational benefits." *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, 207 (1982). As long as the student is making educational progress from his schooling, the educators may determine the appropriate methodology. *See Rowley*, 458 U.S. at 208.

Student, through his mother, Sharon Nygren ("Parent"), requested review of a final administrative decision determining that the proposed placement of Student was reasonably calculated to provide him a FAPE. During the relevant time period, Student was enrolled in the Minneapolis Public Schools ("School"). The School identified Student as a child in need of special education services because of his behavioral disability. He has a history of severe emotional and behavioral problems. *See* IHO 1, 4. Nevertheless, Student continued to make reasonably expected academic progress while attending classes at the School. *See* HRO 21, 25, 26; T., at 483-87; 555; 852-54.[1]

The School developed an IEP for Student using an IEP team. Parent was given full participation rights as an IEP team member as required by the IDEA. *See* HRO 14. The School provided a FAPE to Student during the 1997-98 school year. *See* IHO 11; HRO 15. Student continued at the School as a first-grade student during the 1998-99 academic year. The IEP team met and developed a new IEP for Student. *See* IHO 19. Student received a FAPE during his first-grade year, 1998-99. *See* IHO 11; HRO 15. By further formulating his IEP, the School

---

[1] References to the impartial hearing officer's decision will be "IHO, ___," while references to the hearing review officer's decision will be "HRO, ___." References to the Transcript will be "T., at ___."

provided a FAPE to Student during his second-grade year, 1999-2000. *See* IHO 11; HRO 15.

Student began third grade in the academic year 2000-01. He enrolled in a Special Program for Elementary Needs ("SPEN") classroom at Keewaydin Elementary School. *See* IHO 58. The School held numerous planning and IEP team meetings for Student in Fall, 2000. The IEP team met to assess the educational opportunities provided to Student on August 29, August 31, September 12, October 10, November 7, November 14, 2000, and on January 9, and March 2, 2001. *See* HRO 19. During this process, the School afforded Parent full participation rights as an IEP team member. *See id.* 14. Parent's ideas were not always adopted by the IEP team. *See id.* 20.

On December 7, 2000, Parent unilaterally removed Student from the Keewaydin Elementary School. T., at 2970. Because Parent refused to return Student to Keewaydin, the School offered to place him in a SPEN classroom at Whittier Elementary School. IHO 202. After the winter holiday break, the team agreed to a new IEP and Student's placement at the School's Whittier SPEN classroom on January 18, 2001. *Id.* 205, 212. On January 24, 2001, Student had a serious behavioral incident. *Id.* 134. On January 26, 2001, Parent removed Student from the SPEN classroom at Whittier. *Id.* 194. At Parent's suggestion, the School agreed to provide Student homebound academic instruction.

During Student's time at Keewaydin and Whittier, there is credible evidence in the record that the School provided Student with a suitable IEP designed to impart meaningful educational benefit to him. *See* HRO 16. The School provided Student with instruction programs specially designed to meet his unique needs. *See id.* 21. Included along with his tailor-made plan, the

School allowed Student reduced homework assignments, more time to complete his assignments, separate space in the classroom, positive reinforcement for meeting minimal requirements, a token economy system for reinforcing behavior, and time-out periods to calm himself. *Id.* The School's educational services afforded Student reasonable opportunities to earn academic progress. *See id.* 21, 22, 23, 24. Independent examinations demonstrated that Student's academic achievement was in the average range. *See* IHO 89; T., at 483-84.

On February 20, 2001, the Parent unilaterally removed Student from the School and enrolled Student in a private school, Calvin Academy. IHO 139-40. Calvin Academy serves disabled students and "at risk" students. T., at 2719-20. As a private school, it offers one-on-one academic instruction. *Id.* at 1967. The majority of Student's day at Calvin was spent in isolation from other students. *Id.* at 2850. Student continued to exhibit significant behavioral problems at Calvin Academy. *Id.* at 2841-42, 2859.

Parent initiated this action against the School on Student's behalf, seeking reimbursement for Student's tuition at Calvin Academy.

**DISCUSSION**

The Hearing Review Officer ("HRO") determined that the School's proposed placement of Student was reasonably calculated to provide him a FAPE. The HRO denied Student an award of retroactive and prospective tuition for Calvin Academy. Student appeals the final administrative decision of the HRO under the IDEA, 20 U.S.C. § 1415(h)(2)(A).

Minnesota has a two-tier administrative hearing process. An Independent Hearing Officer ("IHO") holds an impartial due process hearing and issues a decision. *See* Minn. Stat.

§ 125A.09, subds. 6-7. If a party appeals the IHO's decision, the HRO reviews the entire administrative record. *Id.* § 125A.09, subd. 9. The HRO is authorized to seek additional evidence and provide the parties an opportunity for written or oral argument. *Id.* The HRO then issues "a final independent decision based on an impartial review of the [IHO's] decision and the entire record." *Id.*

Both the IHO and the HRO found that the School provided a FAPE to Student through September, 2000. *See* HRO 15. The IHO, however, concluded that the School failed to design an appropriate IEP to meet Student's needs after September, 2000. *Id.* 16. The HRO reversed, finding that the School developed and implemented an appropriate IEP for Student's 2000-01 school year, thereby providing a FAPE to Student. *Id.* 24, 25. The HRO also found that by unilaterally removing Student from the classroom, Parent denied the School the opportunity to continue to assess and refine Student's IEP. *Id.* 26. Accordingly, the HRO held that reimbursement for Student's tuition for private school placement at Calvin Academy was not warranted. *Id.* 28.

Judicial review of the HRO's decision under the IDEA is limited because judges are not trained educators. *E.S. v. Independent Sch. Dist. No. 196*, 135 F.3d 566, 569 (8th Cir. 1998). On appeal, the party challenging the outcome of state administrative hearings has the burden of proof. *Id.* A district court must give "due weight" to the results of the administrative proceedings, but make an independent decision of the issues based on a "preponderance of the evidence." *Independent Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 561 (8th Cir. 1996). The level of deference accorded to the administrative proceedings is less than required under the

substantial evidence test commonly applied in federal administrative law. *Id.* However, a court must resist any impulse to "substitute [its] own notions of sound educational policy for those of the school authorities." *Rowley*, 458 U.S. at 206.

Based upon a preponderance of the evidence, giving due weight to the HRO's decision, the Court finds that the School provided Student a FAPE for the academic years 1997-98, 1998-99, 1999-2000, and 2000-01. The School formulated and implemented an IEP designed to supply Student with meaningful educational benefits and opportunities. With Student's behavioral challenges in mind, the team tailored the IEP to his needs. Parent participated in this process. That the IEP team did not always endorse Parent's ideas does not mean an IDEA violation exists. "[P]arents, no matter how well-motivated, do not have a right under [the IDEA] to compel a school district to provide a specific program or employ a specific methodology in providing for the education of their handicapped child." *Lachman v. Illinois St. Bd. of Educ.*, 852 F.2d 290, 297 (7th Cir. 1988) (citing *Rowley*, 458 U.S. at 207). Under the circumstances, Parent's opportunity to participate in the formulation process of Student's IEP was not "seriously hampered." *S.D.*, 88 F.3d at 562.

At numerous meetings, Student's IEP team was continually making efforts to refine his instruction programs. Student was learning within the average range in his academic subjects, thus demonstrating educational progress. The IDEA does not require the School to provide Student with "the best possible education at public expense." *Fort Zumwalt Sch. Dist. v. Clynes*, 119 F.3d 607, 612 (8th Cir. 1997). Nor does the IDEA compel the School to maximize Student's potential and achieve outstanding results. *Id.*; *E.S.*, 135 F.3d at 568. As long as Student was

benefitting from his educational instruction, the authority is left to the School to determine the appropriate methodology. *See Rowley*, 458 U.S. at 208. The record indicates that the School reasonably calculated Student's IEP to enable him to receive educational benefits. Thus, the School was providing Student with a FAPE. The HRO's decision is affirmed.

The HRO's decision denying reimbursement for summer school costs is also affirmed. When Parent withdrew Student from public school placement, she denied the School the opportunity to determine whether or not "Extended School Year" services were necessary for Student. Thus, the School did not fail to provide a FAPE to Student because the IEP team was unable to assess Student's need for summer school.

When Parent unilaterally placed Student in Calvin Academy, she did so "at [her] own financial risk." *Burlington v. Department of Educ.*, 471 U.S. 359, 373-74 (1985). Because Student's public school placement was not in violation of the IDEA, Parent is not entitled to tuition reimbursement for private school placement. *See Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 10 (1993). Just as *Lachman*, *supra*, determined that parents may not dictate a specific program or a specific methodology be employed to teach their child, so too is a parent lacking the right to choose a private school for her child at public expense. The HRO's denial of an award for retroactive and prospective tuition at Calvin Academy is affirmed.

The IDEA enacted a strong preference that handicapped children attend regular classes with children who are not handicapped. *See id.* § 1412(5). This creates a presumption in favor of Student's placement in the public schools. *See Mark A. v. Grant Wood Area Educ. Agency*, 795 F.2d 52, 54 (8th Cir. 1986). In August, 2001, following a preliminary injunction hearing,

the School and Plaintiff entered into a settlement agreement to resolve the issue of where Student would attend school during the pendency of this action. The School agreed to reimburse Parent for tuition at Calvin Academy through February 4, 2002. The parties further agreed to use the IEP team process to transition Student back into the public schools. Accordingly, the School will not be responsible for reimbursing tuition at Calvin Academy after February 4, 2002. In the event that Parent chooses to place Student in private school after that date, she will not be entitled to tuition reimbursement.

**CONCLUSION**

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Record [Doc. No. 25] is **DENIED**.

BY THE COURT:

Ann Montgomery

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: December 14, 2001